1-5-1-2-7-9 United States of America v. Detroit Medical Center. Arguments not to exceed 15 minutes per side. Mr. Sykes for appellation. Thank you. I'd like to reserve three minutes for rebuttal. May it please the court. I'm Tom Sykes. I'm appearing for Detroit Medical Center, an incorporated not-for-profit tax exempt institution. We are here to seek the standard rate of interest on agreed prior refunds of employer portion FICA tax. This large dollar issue before this court is precisely the same one faced by scores if not 100 other similarly situated teaching hospitals. I expect the IRS to emphasize for its part that this court should just put its stamp of approval on the Second Circuit's opinion rendered last December in the Maimonides case. I am pleased to take up that gauntlet. That opinion has perhaps seven glaring fundamental flaws depending on how one counts. During this argument I won't make it all through through all seven but perhaps I can make it through about four of those flaws perhaps. I did refer to these flaws in the Rule 28J letter that I filed last December and I would invite the court to keep that letter in mind after the court retires to Chambers. By far the most interesting flaw is that the opinion concludes that there's some core meaning of corporation that emanates from the plainly supplemental 7701A3. Now that statute is found at the back of the Internal Revenue Code. It's a definitional statute. It's rather strangely written. It says that corporation includes, this is how we know it's plainly supplemental, it's not a comprehensive definition in any sense, but it includes joint stock companies, insurance companies, and associations. Just to begin with it's a very odd proposition that a core meaning could emanate from a supplemental statute. It ought to run exactly the other way. The core meaning is found in the main statute and there's a supplementation that occurs by way of 7701A3. One cannot possibly tease out of 7701A3 some core meaning. But more important and more glaring is the fact that the joint stock company cannot possibly be a 501C3. A joint stock company is a for-profit entity with shareholders. That can't be a 501C3. Counselor, I have this question. So let's say that your background principles argument is that when they refer to corporation they're referring to C corporation. Yes. I mean that's what I take to be one of your arguments. That is my fundamental argument. So if that's true, isn't it strange that in C3A you suddenly see this reference to C corporation? In other words, if the idea is that when they talk about corporations they're referring to C corporations and they have lots of references just to corporation corporate, but then suddenly in C3 you see a reference to a C corporation. Well, why would you show that if corporation normally means C corporation? Well corporation, and I'll get to this, can have a variety of meanings ranging from narrow to broad and that's a point I want to emphasize in a minute, but let me address the court's question. The provision, the interest adjustment provision, let's call it, the deals with underpayments was enacted in 1990 and as a baseline that interest adjustment provision concerns C corporations in a gloss that's provided down below. The frontline term is large corporate underpayment and then we've got this gloss. Okay, so in 1994, I'm sorry, you can have small C corps. Well, they're called S corps. Well, no, okay, well that's that's absolutely true. One could form a and but but I'm not sure I understand the distinction that the court is after. I figure out why they suddenly use the phrase C corporation if corporation already means C corporation. That's what I thought. Well, it doesn't always inevitably mean C corporation. That's kind of the default that appears in the cases when, you know, we let's talk about the different types of corporations. You got S corps, you know, which I think we have that, and we've got and I view it as helpful to view this in terms of concentric circles reaching out from a narrow definition, perhaps C corp being the narrowest, perhaps S corp being the narrowest, not sure which one, and then at the at the outer limits it encompasses C corps, S corps, joint stock companies because of the definition, insurance companies because of the definition, and finally, of course, incorporated not-for-profit tax-exempt entities. That's that's the broadest, and here's the fundamental logical error that the IRS makes. It argues that corporation over on the overpayment side, the provision we're dealing with, enacted 1994, doesn't mean C corp. Let's assume they're right about that. They aren't, but let's assume that they are. They make the logical leap that jumps from the idea that the, if it doesn't mean C corp, then it has to be the broadest. No, no, no. There are a whole bunch of intermediate landing zones, if you will, intermediate concentric circles where you could land, and the Exxon Mobil rule prevents jumping directly to the outer limit. So what's the answer in this case? If we look at just A, 1B, that's the first reference to corporation, right? So that's in general rule, overpayment rate, and it's B that you have the first reference to corporation, okay? So I was thinking your argument was, well, that means C corporation, and that leads to this oddity of then they specifically say C corporation. So if they don't, if corporation doesn't always mean C corporation in these sections, does it mean S corp there as well as C corp? What it doesn't mean, it doesn't have the broadest possible definition, because there's no basis for skipping over. Tell me where to, in your concentric circle, where do you stop? It's enough for me to prove that it doesn't jump automatically, because of the Exxon Mobil, I need to emphasize, pardon? Does it include S corps? Pardon? Does it include S corporations in the first reference? I wouldn't find that to be a ridiculous result, but I think for it to include not-for-profit entities, those that happen to be, that subset that happens to be incorporated, that is ridiculous. S corps wouldn't be ridiculous, because at least those are for-profit entities. So that's how, you know, I don't think it's necessary for me to tell you exactly how far that term corporation extends. It's enough for me to say that it does not reach my client, and the reason it doesn't reach my client is because of Exxon Mobil, a 2012 Second Circuit opinion, which says that this statute, 6621d, is to be construed in favor of the taxpayer. We've got all kinds of pivot points in this case, and you've got this construed in favor of the taxpayer rule, and at all of those pivot points, it comes into play. And the Maimonides opinion completely skips over Exxon Mobil. It doesn't mention Exxon Mobil, which is just kind of breathtaking to me. Exxon Mobil isn't even mentioned. It deals with the same statute. How can that be? So, you know, I think that in terms of the concentric circles, there's no basis for jumping to the outer circle when you have the word corporation over on the large corporate overpayment side. But I rely also, you said it's kind of hard to figure out which concentric circle is the place to stop. That would suggest there's some ambiguity. Is there any role for administrative deference here? No. Because. Because. From 1960 to 1996, the Kintner regulations, so-called Kintner regulations, named after a case were in effect, and those did not encompass, they defined corporation under 7701A1, that provision at the back of the code, and they defined that provision as not encompassing tax-exempt entities. So, you know, that's one possible landing point. And in fact, when Congress in 1994 enacted the major piece of this legislation, by the way, you referred to the sentence that was enacted in 1998, I think that it's proper really to look at the sequence of enactment, because that kind of tells you what Congress was thinking. And this is not a perfectly drafted statute, but the ExxonMobil rule kicks in and is, doubt is required to go in favor of the taxpayer in this case. And I think in pairing materia is fully applicable. I want to also add that kind of the the IRS throws the kitchen sink at us, and to an extent the Second Circuit bought into that. And I have answers for the kitchen sink propositions that are thrown at us, they're in my reply brief, and in particular part 3, paragraphs G, H, and I. And I don't want to go into those in detail. You mentioned deference, I want to circle back to that. There's the 1997 reg. Now, if that were a valid reg, there would be administrative deference. That's not a valid reg. It's an egregious reg, it wasn't even relied on in the Second Circuit by the IRS. I mean, I've never seen that. I've been litigating for 30-some years. I have never seen the IRS... Egregious, you mean like because it contradicts the language of the statute? Yes, yes, and it makes no sense to apply it to tax-exempt entities. That's where it's egregious. Why on earth would that apply to tax-exempt entities? The IRS has never been able to say why that 1997 reg should apply, should reverse, first of all, reverse the long-standing Kintner regs, in effect for 36 years, and apply to tax-exempt entities. Why is that? They've never told us, and I believe they won't be able to tell you that here. So, there is no deference that's owed. We are dealing, as they admit on brief, we're just dealing with the statute. They don't really defend the reg. They go through the motions. It's on brief. It's a very kind of pro forma defense, and I've got 12 pages in my opening brief dealing with why the reg is invalid under step 1, step 2, and also, just as important, step 0. So, and again, I'd emphasize the asymmetrical and illogical effects of, you know, treating a subset of tax-exempts as subject to the harsh rate, while the other portion of tax-exempts I would emphasize that a tax-exempt that happens to be incorporated gets the favorable rate on underpayments. Were there any absurdities? I mean, I get your absurdity about doing this at all with respect to tax-exempt corporations. I understand that. I share the reaction, but are there any other absurdities about when you look at the parenthetical, and whether you call it the last antecedent can or not, just forget that, but the key point is you only look to C3 to define taxable period. In other words, you just go to C3b's. Is there anything odd or absurd about that? Actually, my position is that the parenthetical pertains to taxable period plus corporation, but it doesn't extend to overpayment. I understand. I know what your position is. I'm asking you if we rule for the government and say it only incorporates the taxable period point, does that because Congress twice used the term C3. Oh, and not saying B, so it's odd that they didn't say C3b. Yeah, it should have said C3b if it meant to limit it. It didn't, and it reiterated it in a technical correction. They had time to think about this. How about other practical ones, like it just wouldn't work with nonprofits to do this? Well, the policies make of, you know, a favorable rate on one side, unfavorable, that makes no sense to me. The subset thing makes no sense to me. The interest hit that the nonprofits, remember this is the most favored category of taxpayers, the interest hit that a nonprofit, because they can't deduct, you know, their interest is not income, so when they lose the beneficial rate, they are effectively hit 56% harder. Yeah, thank you, Your Honor. May it please the Court, Deborah Snyder for the United States of America. The District Court's judgment is correct because Detroit Medical Center is a It's therefore not entitled to the higher rate of interest that the statute provides for non-corporations. This case is indistinguishable from the Maimonides case, and the taxpayer has presented no reason for this court to reach, to decide this case differently from that one. The fundamental problem with Detroit does not contain a special definition of the term corporation. Why would the government want to treat Warren Buffett better than the Red Cross? Well, it's not a question of what we want or don't want to do, it's a question of the statute that Congress wrote. We're entitled to ask for a policy explanation that makes sense of the very rich individuals way better than the Red Cross. I just can't imagine it. Well, I have two answers to that. I mean, first, when Congress legislates in the tax area, they often do so for revenue reasons, not policy reasons, and you can see that in the 94 GAT rate provision, they put it in as an offset to tariff concessions, and so that's why Congress does what it does. But the second response that I would have to that is that tax-exempt corporations, they're exempt from income tax, but they're not exempt from employment tax, and there's no reason to assume that Congress wanted to treat corporations that are exempt from income tax more favorably with respect to the rate of interest they get on overpayments of employment tax. So that's the policy explanation, and in terms of being hit harder, I mean, we responded to that in our brief. The only reason that there's a larger dollar amount hit for a tax-exempt corporation is because they get to keep more of the interest in the first place. I mean, keep in mind they already receive a benefit because they don't pay tax on the interest that they receive, so they already receive a benefit in that way. But, you know, fundamentally, any asymmetry comes from the words of the So, you know, if the taxpayers would have wanted a different result, I guess the complaint's probably better put to Congress than to the courts. You know, the statute is very clear, and, you know, it doesn't contain a special definition of the term corporation, and the Medical Center argues that, well, it essentially imports a special definition by means of that cross-reference to subsection C-3, but the problem with that is subsection C-3 doesn't define corporation. It defines large corporate underpayment, it defines taxable period, and the most natural way to read the statute, and as the Second Circuit held, the only plausible way to read the statute, is that it imports the definition of taxable period. It didn't say C-3B. It didn't say C-3B, and that level, that kind of imprecision is actually common in the Internal Revenue Code. I think the Second Circuit explained that it actually pervades the Internal Revenue Code, and there are some examples on page 91 of the Maimonides opinion, where the code will say subsection blank for a definition, but the definition is actually contained in sub-subsection, and, you know, that it's just not that unusual for that to happen in the Internal Revenue Code, and because there isn't a special definition of the word corporation in section 6621, we use the general definition of the term that's contained in section 7701A3, which applies for purposes of the Internal Revenue Code, and as this court held in the O'Neill case, a corporation under state law is a corporation under section 7701A3, and the Tenth Circuit said the same thing in the Empey case, and I think the phrase that this court used was definitional load star to explain that a state law corporation is a corporation under section 7701A3, and in fact, I don't think the taxpayer disputes that a for-profit corporation under state law is a corporation under section 7701. They argue only that a charitable corporation is not within that definition, but the historical structure of the taxing statute makes clear that they are. Does everyone agree that 6621, whatever chapter or subchapter it's in, applies not just to income tax overpayment and underpayment? Yes. Well, no, I'm talking about 6621. Oh. I'm asking whether that whole scheme, does everyone agree that's designed, I mean, clearly that's designed for income tax overpayment and underpayment. Is there agreement, and where does, what's the source of the agreement that that also applies to FICA tax under and overpayments? Well, that's never been disputed, and you know, it sets a rate for overpayments, and overpayments could be of income tax or FICA tax. I don't think the taxpayers ever argued that this rate doesn't, that these provisions don't apply to employment taxes. There's no special interest rate provision that... And is 6621 in subchapter C? What chapter is it in? It's not in subchapter C. It's in, well, the interest rate provisions are actually in chapter 67. I don't know, chapter 1 is normal taxes and surtaxes, so chapter 67, I guess it's toward the general provisions that... 501c3, that whole subchapter F or whatever, says nothing about FICA tax over or underpayment. Not that I know of. There's no special provision for that, and in fact, I mean, this is the second appeal in this case. In the first appeal, when we were talking about the merits of the overpayment, I mean, it was the same FICA tax provisions that apply to anybody, so, let's see, right, as I was saying, the evidence that a non-profit corporation is a corporation, generally, it comes from the structure of the taxing statute itself, which has always imposed a tax on every corporation, and that's in section 11, and then it's had to carve out not-for-profit corporations, and that's in section 501c3, and that carve-out would not be necessary if a not-for-profit corporation were not a corporation, and I think the taxpayer was referring to ambiguity. Section 6621 is not ambiguous, so it's not a question of whether it be construed in favor of the government or in favor of the taxpayer. Even if it were ambiguous, the Supreme Court decided a case called White v. United States in 1938 that said that taxing statute is the same as other statutes, it's the role of the court to resolve doubts, we don't construe a taxing statute against the government necessarily, but we don't think you need to get there because we think the language of section 6621 is clear. I would also note that even if it were true, as the taxpayer argues that the word corporation in 6621 meant C-corporation, the judgment should still be affirmed because they are a C-corporation within the plain meaning of the statute as well. Section 1361A2 defines a C-corporation as a corporation which is not an S-corporation, and they're not an S-corporation, so they're a C-corporation within the plain meaning of that language. There's nothing called F-corporations? There's nothing called F-corporations. Why can't they call them F-corporations? Well, they can call themselves that, but I don't think that that has any particular implications for this case. I mean, section 1361 says if you're not a C-corporation, if you're not an S-corporation, you're a C-corporation, and the best evidence of that is actually a statute that Congress enacted in 1996, which is now repealed, but it was a statute pertaining to facets where they carved out tax-exempt corporations from the definition of C-corporation, and that's on pages 39 to 41 of our brief, but they basically defined an eligible corporation as a domestic C-corporation other than a corporation that's exempt from tax. Congress would not have had to do that if tax-exempt corporations were not already C-corporations within the meaning of the code. The medical center's response to that on brief was that Congress was simply acting in an overabundance of caution when they did that, but Congress would not have had to draft around section 1361 if Congress had really thought that tax-exempt corporations were not C-corporations. They could have amended section 1361 to say that, and there are also examples of regulations that have done the same thing, and those are also in our briefs carved out a tax-exempt corporation from the definition of C-corporation, and I know that the medical center points to cases and treatises where C-corporations are described as corporations that pay income tax, and none of those authorities were actually addressing this question, which is whether the definition of a C-corporation includes a tax-exempt corporation, and that's because the issue almost never arises. It just doesn't come up, so it's not surprising, really, that courts and commentators would use some amount of imprecision when discussing that. As is the case with the word corporation, the only usage of the term C-corporation that matters for this case is the definition that's in the statute, and under the statutory definitions, a tax-exempt corporation is a corporation, and if the court reaches the issue, it's also a C-corporation. Do you think this last antecedent canon doesn't apply? Well, you know, normally the last antecedent canon is used in the context of a series. You have a few words separated by a comma, and then you'd say that the term modifies the last in the series. We don't think you need to get there, really. I know the court in Eaglehawk-Carbon, which is another court of federal claims, rejected the same cross-reference argument that the taxpayer is making here. The court in Eaglehawk-Carbon found that to be helpful. You know, I think really what we're talking about is the most natural reading of the statute, regardless of the canon that applies. And regarding the regulations, we just don't think that this case implicates the regulations at all. We think that the answer is clear from the language of the statute, but to the extent that the taxpayer is suggesting that there has been a regulation at some point that said a state law corporation is not a corporation, that's not the case. State law corporations have always been corporations. You know, to the extent that there may have been any question about how to classify a tax-exempt entity, that referred to entities that were not state law corporations. They were organized in some other way, and that's always been the focus of the regulations, whether it be the Kintner regulations or the check-the-box regulations. The question was how you classify entities that are kind of, they're not state law corporations, they're not corporations per se. They are organized in some other way, and the question is how to classify them. There hasn't been any lack of clarity regarding organizations that have been organized as corporations under state law. I see that my time is running out. Does the court have any further questions for me? We do not. We ask for affirmance. Thank you. Thank you, counsel. I kind of made some notes here. I want to start with the in peri materia canon of statutory construction, because that really is very difficult for the government to get around. We've got a pervasively interlocking statute here. The overpayment provisions refer over to the underpayment provisions. The underpayment provisions refer over to the overpayment provisions. It's pervasively interlocking. It's kind of the classic case for imposing in peri materia. In peri materia can be imposed in cases where there's a much less direct relationship than we've got here, and it's our view, just to be clear, that the C corporation limitation over on the underpayment, large corporate underpayment side, is applicable as well to the statute dealing with large corporate overpayments enacted a mere four years later. These enactments dealing with the adjustments all need to be interpreted in light of each other. The government emphasizes the O'Neill and Impey cases out of the Sixth Circuit. Those are for-profit cases. They didn't speak to nonprofits. They didn't lay down any law that says that a not-for-profit that happens to be called a corporation, that that somehow trumps. Let's assume my Impey materia is correct. O'Neill involves a C corporation? Pardon? O'Neill involves a C corporation? No, they involve partnerships. Actually, the IRS is on the opposite side in those cases, arguing for something entirely different than it is. The argument was over whether a personal service corporation, as I recall, was per se a corporation. This is a for-profit dispute having nothing to do. And that dealt with the regs under 7701, but I've already shown that 7701 cannot possibly apply to tax exempts, and the Kintner regulations said that they don't apply to tax exempts. So this effort to somehow apply 7701 to tax exempts contradicts 36 years of their own regulation. It makes no sense to me. I'm very much amused by the argument that a tax-exempt corporation can be viewed as a C corporation. If this court would hold that, it would explode upon the tax scene. C corporations are for-profit entities. Now you're getting our attention. There isn't one tax lawyer in this city who would agree with the proposition that a tax-exempt is a C corporation. Not one. It's just fundamental. And it's a very strange argument. I'm actually extremely surprised that they'd even make it. I'm not sure why they're making it. I know it gets them to the win that they want to win, but in terms of tax administration, it would be disastrous. And I worked on the tax administration side myself for 14 years. So that's just a ridiculous argument. And then we hear an argument from them that imprecision is common in the Internal Revenue Code. But at the same time, they try to be hyper-technical in terms of construing corporation over here as not being able to partake. So anyway, I've heard a lot of interesting things. Thank you. Thank you, counsel. Well, this was a swell argument for immediately after lunch. The case will be submitted.